# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**JOE HAND PROMOTIONS, INC.,**

    **Plaintiff,**

    **v.**                           **Case No. 11-CV-931**

**THAT PLACE, LLC d/b/a That Place on 8th,
JOSEPH M. BROST,**

    **Defendants.**

---

## DECISION AND ORDER FOLLOWING COURT TRIAL

---

This is an action under The Communications Act of 1934, as amended, 47 U.S.C. § 605, *et seq.*, and The Cable & Television Consumer Protection and Competition Act of 1992, as amended, 47 U.S.C. § 553, *et seq.* The plaintiff, Joe Hand Promotions, Inc. ("Joe Hand") alleges that it was granted the exclusive right to distribute the Ultimate Fighting Championship 106: Tito Ortiz v. Forrest Griffin II, broadcasted on November 21, 2009, (the "Broadcast") via closed circuit television and via encrypted satellite signal. (Complaint ¶ 10, Docket # 1.) Joe Hand alleges that the defendants, That Place, LLC d/b/a That Place on 8th and Joseph M. Brost, ("That Place" and "Brost," collectively the "defendants") unlawfully intercepted, received and/or de-scrambled the satellite signal and exhibited the Broadcast at That Place. (*Id.* ¶ 13.)

In its complaint, Joe Hand alleged violations of both § 605 and § 553 because it could not determine if the defendants intercepted the Broadcast via a cable system, in violation of 47 U.S.C. § 553, or via a satellite transmission, in violation of 47 U.S.C. § 605. However, Joe Hand also acknowledged that the defendants can only be liable under one of the statutes. (*Id.* ¶ 25.) At trial, the

parties agreed that this case did not involve cable. Consequently, the Court dismissed count two of the complaint, brought under 47 U.S.C. § 553.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. Upon all parties consenting to the full jurisdiction of a magistrate judge, this case was reassigned to this Court. (Docket # 11.) A trial to the Court was held on April 16, 2012, (Docket # 23), and the Court ordered the parties to submit post-trial briefs and proposed findings of facts and conclusions of law, (Docket # 22.) The matter is now ready for resolution.

## FINDINGS OF FACT

On April 16, 2012, a trial to the Court was held in this matter. Defendant Brost testified. The parties also stipulated to the affidavit of Gregg McGinnis, an investigator for Joe Hand. Pursuant to Fed. R. Civ. P. 52(a)(1), the Court makes the following findings of fact based on the testimony at trial and the stipulation of the parties.

Joe Hand is a programming distributor. It was granted the right to distribute the Ultimate Fighting Championship 106: Tito Ortiz v. Forrest Griffin II, including undercard bouts and the entire television broadcast, broadcasted on November 21, 2009, via closed circuit television and via encrypted satellite signal. Joe Hand had agreements with various commercial entities throughout Wisconsin allowing them to publicly exhibit the Broadcast to their patrons.

That Place is a small neighborhood tavern with a maximum capacity of 59 persons. The tavern occupies the first floor of a two story house. On the second floor of the house is a small apartment where Brost, the owner of the tavern, resides with his family. Prior to opening That Place in 2008, Brost purchased services from Direct TV for the building. Brost believed Direct TV was familiar with the building's dual use as a residence and as a tavern business. Direct TV installed one

box for a television connection in the upstairs residence and four boxes for television connections in the tavern area. Brost did not modify the Direct TV installation. Brost paid Direct TV using the business bank account.

The Broadcast originated via satellite uplink, and was subsequently re-transmitted to cable systems and satellite companies via satellite signal, including Direct TV.

On November 21, 2009, Brost ordered and paid for the Broadcast while in the residence area through Direct TV's telephone ordering system. Brost then watched the Broadcast in the tavern. Brost paid the residential, not the commercial, rate for the Broadcast. Brost was not aware he was being charged an incorrect rate.

The defendants did not collect any fee for entrance or viewing, cover charge, or increase in drink prices, did not receive any compensation or consideration relating to the Broadcast, did not conduct or perform, nor did they have any other party conduct or perform, any advertising, marketing, promotion, or advance notification of the transmission of the Broadcast. Approximately 19 to 21 patrons were in the tavern area of the building during the Broadcast. On November 21, 2009, That Place had fewer patrons and received less revenue than on a typical Saturday evening and did not receive enough income to cover expenses.

On November 21, 2009, at approximately 9:05 p.m., Gregg McGinnis, an investigator for Joe Hand, entered That Place. McGinnis did not pay a cover charge to enter the establishment. McGinnis ordered one drink from the bartender. McGinnis observed four televisions in the establishment, all displaying the Ultimate Fighting Championship 106: Tito Ortiz v. Forrest Griffin II. During McGinnis' time inside That Place, he counted the number of patrons three separate times and the head counts were 19, 19, and 21. McGinnis left That Place at 9:30 p.m. and observed four vehicles in the parking lot.

Sometime after November 21, 2009, Brost received a letter from an attorney in California stating he should have been charged more for the Broadcast. Brost sent a letter in response in August 2010 asking what he owed. On December 9, 2010, Brost sent a second letter stating that he has "no issues with paying what I owe" and that he "would appreciate if we could resolve this matter." (Ex. 2.)

## ANALYSIS AND CONCLUSIONS OF LAW

### 1.  *Liability Under The Communications Act*

Section 605(a) of The Communications Act of 1934 (the "Act") governs encrypted satellite transmission. Any person aggrieved by a violation of the Act has a right of action enforceable in federal court. § 605(e)(3)(A). As in the present case, the statute is used by the owners of exclusive rights in closed-circuit boxing matches to recover damages from the owners of establishments that have broadcast such events without purchasing the right to do so. *See generally Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955 (E.D. Wis. 2001); *Joe Hand Promotions, Inc. v. Ewer*, No. 09–C–612, 2009 WL 3269658 (E.D. Wis. Oct. 8, 2009).

The Act lists several types of unauthorized publication or use of electronic communications, setting forth separate prohibitions in each sentence. 47 U.S.C. § 605(a). The first sentence states:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney. . . .

47 U.S.C. § 605(a).

The second sentence of § 605(a) states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

*Id.*

The third sentence provides:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

*Id.*

Finally, the fourth sentence provides:

> No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

*Id.*

While the second and fourth sentences of § 605(a) require both an unauthorized "interception" and a divulgence of the transmission in order to establish liability under the Act, the first and third sentences of § 605(a) do not similarly require an "interception" and simply proscribe the unauthorized divulgence or use of communications which have been "received" legally for certain purposes. *See That's Entertainment, Inc. v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993).

Although sentence four of the Act requires knowledge of the interception, sentences one, two, and three of the Act do not require a knowing violation. *See generally ON/TV of Chicago v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985); *Kingvision Pay Per View, Ltd. v. Williams*, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998); *That's Entertainment*, 843 F. Supp. at 999. In other words, there is no *mens rea* or *scienter* element for violations of sentences one, two and three of the Act. *See* 47 U.S.C. 605(e)(3)(C)(i)(II); *Joe Hand Promotions, Inc. v. Easterling, et al.*, No. 08 CV 1259, 2009 WL 1767579, at *4 (N.D. Ohio

June 22, 2009). Therefore, intent is immaterial to liability, but "'intent is relevant to the calculation of plaintiff's remedies' with regard to the augmented amounts for liquidated damages for willful violations." *Id.* (quoting *Joe Hand Promotions, Inc. v. Williams*, No. 07–CV–406, 2009 WL 348294, at * 2 (W.D. Ky. Feb. 11, 2009)). Thus, the statute imposes liability even when "the violator was not aware and had no reason to believe that his acts constituted a violation." *Id.* As such, knowledge is relevant to a party's damages, not his liability. *Kingvision*, 1 F. Supp. at 1484.

In this case, defendants do not contest the strict liability required by the statute, but argue that not all necessary elements have been proven. (Defs.' Br. at 3, Docket # 26.) First, the defendants argue Brost was authorized to receive the Broadcast and paid for it. (*Id.* at 4.) These facts, however, do not defeat liability. Even accepting there was no unauthorized "interception" because Brost was authorized to receive the Broadcast, the defendants have still violated the Act because they were not authorized to "divulge or publish" the Broadcast to the patrons of a commercial establishment, such as That Place. *See That's Entertainment*, 843 F. Supp. at 999.

Second, Brost argues that the evidence does not indicate whether the Broadcast was actually viewed by anyone but Brost. (Docket # 26 at 4.) This contention ignores the stipulated evidence from McGinnis, indicating that he observed the Broadcast on all four televisions inside That Place and that he observed between nineteen and twenty-one patrons in the tavern. The Court finds it unconvincing that none of the nineteen to twenty-one patrons at no time laid eyes on any of the four televisions showing the Broadcast. At a minimum, the evidence clearly shows at least one patron, McGinnis, viewed the Broadcast at That Place.

In summary, the facts show that defendants displayed the Broadcast to patrons of their establishment without contractual authorization from Joe Hand or its agents. Accordingly, the Court finds, as a matter of law, that the defendants violated § 605(a) of the Act.

### 2. *Damages*

#### i. Statutory Damages

A party entitled to relief under the Act may elect actual or statutory damages. § 605(e)(3)(C)(i). Plaintiff has elected statutory damages pursuant to § 605(e)(3)(C)(i)(II) which permits recovery of an amount of not less than $1,000.00 or more than $10,000.00, as the court considers just. However, where "the violator was not aware and had no reason to believe that his acts constituted a violation" of this statute, an award of damages may be reduced "to a sum of not less than $250." §605(e)(3)(C)(iii). "The Court should exercise this discretion only in 'those rare instances of ignorance of the law on the part of one adjudged to have violated it.'" *DIRECTV, Inc. v. Boonstra*, 302 F. Supp. 2d 822, 830 (W.D. Mich. 2004) (citing *Joe Hand Promotions, Inc. v. D.M.B. Ventures, Inc.*, No. Civ. A. No. 93–2656, 1995 WL 683847, at *2 (E.D.La. Nov.14, 1995)) (internal citations omitted). Such a reduction may be appropriate where there is no evidence that the defendant knew that he or she was violating the law. *See id.* (citing *Don King Prods./Kingvision v. Lovato*, No. C–95–2827, 1996 WL 682006, at *4 (N.D.Cal. Nov.15, 1996)).

The defendants argue that if they violated the Act, Brost was not aware and had no reason to believe that his actions constituted a violation. The Court agrees. Brost's uncontroverted testimony is that he paid for the Broadcast and did not realize that he was charged a residential rather than a commercial rate until he received a letter from an attorney in California informing him he should have paid more for the Broadcast. He also testified that Direct TV was familiar with the

building's dual use as a residence and tavern. Direct TV installed the system in his residence and tavern. He also paid Direct TV out of the business bank account. On this evidence, the Court finds that the defendants were not aware and had no reason to believe their actions constituted a violation of § 605(a).

Plaintiff contends that even if the Court finds that Brost did not willfully commit a violation, it should not reduce the damages absent a finding that Direct TV failed to inform Brost that broadcasting the event in a commercial establishment required a substantially larger payment than the residential rate. Plaintiff cites and the Court finds no authority for this proposition. While what Direct TV may have informed Brost would be probative of Brost's knowledge, no such evidence was offered. In the end, the statute merely requires an assessment of Brost's knowledge, not the state of mind or actions of any third parties. Having found Brost's uncontroverted testimony credible, the statutory damages shall be reduced to $250.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(iii). In awarding the minimal amount, the Court considered that the violation in the commercial context was ordinary in scale. There were no more than twenty-one patrons inside the tavern during the Broadcast. Additionally, there is no evidence that the defendants committed repeated violations, imposed a cover charge, advertised the event, or obtained substantial revenue as a result of the improper exhibition of the program. *See generally Kingvision Pay–Per–View, Ltd. v. Guiterrez*, 544 F. Supp. 2d 1179, 1185 (D. Colo. 2008) (listing these and other factors).[1]

    ii.    Attorneys' Fees and Costs

Section 605(e)(3)(B)(iii) also directs the recovery of full costs, including reasonable attorneys' fees, to an aggrieved party who prevails. An award of attorneys' fees is mandatory if the plaintiff

---

[1] Though these factors are generally considered in determining enhanced damages, the Court finds them a useful guide in determining the damage under § 605(e)(3)(C)(iii).

prevails on its claim under 47 U.S.C. § 605(a). *See Charter Communications Entertainment I, DST v. Burdulis*, 460 F.3d 168, 171 n.2 (1st Cir. 2006) ("[U]nder § 605(e)(3)(B)(iii), an award of attorneys' fees is mandatory for any violations of § 605(a) . . ."); *Directv v. Crespin*, 224 Fed. Appx. 741, 758 (10th Cir. 2007) (unpublished) ("[A]n award of attorney fees for a violation of § 605(a) is mandatory . . . "); *DIRECTV, Inc. v. Walsh*, No. 03-CV-72, 2006 WL 3308668, *1 (M.D. Pa. Oct. 12, 2006) ("Since the Court has entered judgment in DIRECTV's favor on its claim under 47 U.S.C. § 605(a), an award of attorney fees and costs is mandatory.").

In this case, plaintiff requests $2,525.00 in attorneys' fees. (Affidavit of Peter S. Balistreri ("Balistreri Aff."), Docket # 24-1.). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar method. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Pickett v. Sheridan Health Care Center*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley*, 461 U.S. at 433) ("To determine a reasonable fee, the district court uses the lodestar method, multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'").

There is a "strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (internal quotation marks omitted); *Pickett*, 664 F.3d at 639. The Seventh Circuit has defined a reasonable hourly rate as one that is "'derived from the market rate for the services rendered.'" *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The court presumes that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate. *Id.* The fee applicant bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886,

895 n. 11 (1984)). If the fee applicant satisfies this burden, the burden shifts to the other party to offer

evidence that sets forth "a good reason why a lower rate is essential." *Id.* (internal quotation and

citations omitted). However, once the lodestar is determined, the court may adjust the fee upward

or downward based on a variety of factors, the most important of which is the degree of success

obtained. *Hensley*, 461 U.S. at 430, n.3, 436.

Here, plaintiff's counsel has been practicing law in the State of Wisconsin for 48 years and

charges a regularly hourly rate of $250.00. (Balistreri Aff. ¶ 3, Docket # 25 at 2.) Plaintiff's counsel

billed for time from September 28, 2011, when he first received the file, until April 18, 2012.

(Balistreri Aff. ¶ 2 and attachment.) During this less than seven month period, plaintiff's counsel

spent 10.10 hours litigating this case. The Court finds neither his rate nor his hours spent on this case

unreasonable.

In urging for a reduction in the lodestar amount, defendants' primary argument is that given

plaintiff's behavior in this case, no amount of attorneys' fee is reasonable or the plaintiff should

receive no more than $1. In support of this position, defendants point out that they made diligent

efforts to contact plaintiff's counsel and resolve this matter short of litigation. And that ultimately the

pursuit of litigation itself was unreasonable. (Docket # 26 at 7-9.) While there is some authority for

the proposition that a willingness to negotiate settlement may favor a reduction in a fee award, *see*

*Alexander v. Mayor and Council of Cheverly*, 953 F.2d 160 (4th Cir. 1992), and the Court has an interest

in discouraging unnecessary litigation, the Court is reticent to, in essence, penalize the plaintiff for

exercising his statutory right to enforce legitimate claims under the Act.

Additionally, defendants argue the lodestar should be adjusted based on plaintiff's limited

success with the award of only nominal damages. While there is authority for such a reduction, *see*

*Hensley*, 461 U.S. at 430, n.3, 436, in this case the Court in its discretion will not reduce the lodestar amount on this ground for two reasons. First, the Seventh Circuit has cautioned that fee awards "'should not be linked mechanically to a plaintiff's award,'" *Schlacher v. Law Offices of Phillip J. Rotche & Associates, P.C.,* 574 F.3d 852, 857 (7th Cir. 2009) (quoting *Eddleman v. Switchcraft, Inc.*, 927 F.2d 316, 318 (7th Cir. 1991)), and that "'[i]t cannot be the case that the prevailing party can never have a fee award that is greater than the damages award,'" *id.* (quoting *Deicher v. City of Evansville*, 545 F.3d 537, 546 (7th Cir. 2008)).

Second, while the damages are the minimal allowed under the statute, the plaintiff was successful in the primary objective of the lawsuit: vindicating a violation of the Act and its exclusive rights to the Broadcast. Moreover, plaintiff's award was not *de minimis* or a mere technical victory. Plaintiff established a legitimate violation of the Act and a genuine violation of its exclusive rights to the Broadcast. The damages are only minimal to mitigate the fact that the defendants did not act willfully. To in turn deny attorneys' fees because of the mitigated damage award would only serve to belittle the violation of the Act.

Alternatively, defendants argue that $475.00 itemized for appearance at a mediation should be deducted from the lodestar because plaintiff's representative failed to appear in person. The defendants, however, have not shown that but for this fact, the case would have settled at mediation. Further, plaintiff's counsel indicated plaintiff's representative, who is located in Pennsylvania, was in constant contact with plaintiff's counsel during the course of the mediation and had full settlement authority. (Docket # 28 at 2.) Moreover, plaintiff's representative traveling from Pennsylvania would only have added to the cost of this litigation. On these facts, the Court is not persuaded that this amount should be deducted from the lodestar amount.

In sum, the defendants have not shown satisfactory reasons for reducing the lodestar. Accordingly, given plaintiff's counsel's experience and the small amount of hours spent on this case, the $2,525.00 is a reasonable lodestar figure. And because defendants' arguments for reducing this amount are not persuasive, it is also the presumptively reasonable fee award.

As to costs, plaintiff seeks costs in the amount of $425.00, including the filing fee of $350.00 and the service of process fee of $75.00. (Docket # 25-1, ¶ 6.) The defendants do not specifically contest the costs, beyond arguing the litigation as a whole was unnecessary. As such, Joe Hand will be awarded $425.00 in costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Clerk of Court shall enter judgment in favor of the plaintiff and against the defendants, jointly and severally, in the amount of $3,200.00 for statutory damages, attorneys' fees, and costs, pursuant to 47 U.S.C. § 605(e)(3)(B)(ii) and (iii).

**IT IS FURTHER ORDERED** that this action be and hereby is dismissed.

Dated at Milwaukee, Wisconsin this 29th day of June, 2012.

BY THE COURT

*s/ Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge